**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| STUART HENDERSON and | ) | |
| REGINA HENDERSON, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 03-CV-526-CVE-PJC** |
| | ) | |
| HORACE MANN INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

On December 29, 2005, Chief U.S. District Judge Claire V. Eagan referred [Dkt. # 145] to the undersigned Plaintiffs' Motion for Attorney Fees.  [Dkt. # 110].  Following a hearing on February 10, 2006, I concluded that Plaintiffs ("the Hendersons") are entitled to an award of fees as prevailing parties under Okla.Stat. tit. 36, §3629(B).  However, because Plaintiffs then had an appeal pending with the Tenth Circuit regarding this Court's ruling on their bad faith claim, I recommended that determination of the fee award be stayed until the appeal was resolved because the outcome might affect the fees recoverable. *See* Report and Recommendation [Dkt. # 153].  The District Court adopted that Report and Recommendation on July 6, 2006.  [Dkt. # 161].

Now, Plaintiffs have voluntarily dismissed their appeal to the Tenth Circuit [*see* Dkt. #169]; accordingly, the amount of attorney fees recoverable is ripe for determination.

Plaintiffs' claim attorney fees of $137,770.50 in recovering $25,001.00 on a breach of insurance claim.[1]  In their Reply to Defendant's Supplemental Response to Plaintiffs' Supplemental Brief in Support of Plaintiffs' Motion for Attorney Fees [Dkt. # 203], Plaintiffs, for the first time, ask that their requested fees be enhanced under the criteria set out in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659, 660-61 (Okla. 1979) (hereafter the "*Burk* factors").[2]  I find this request untimely since it should have been included with the original motion.  Furthermore, enhancement is unwarranted under the circumstances presented.  For the reasons set forth below, I recommend a substantial reduction in this fee request.  My primary reasons are these:

- The hourly rates requested are higher than prevailing community rates for the type of work involved.
- The number of hours expended is excessive.  Plaintiffs have failed to meet their burden to justify significant amounts of time expended on this case.
- Partial success:  Plaintiffs prevailed on their breach of contract claim, but did not prevail on the bad faith claim.
- There are numerous errors in billing judgment, including attorneys spending time on tasks that paralegals could handle, time spent on unproductive activity, duplication of effort, and billing for time that would normally not be charged to one's client.
- There are numerous problems with the time records submitted, including block billing and vague entries that render impossible an adequate review of the records and determination of the reasonableness of the time spent.

Based on my review of the record and the considerations summarized above, I RECOMMEND an attorney fee award to Plaintiffs of **$36,650.00.**

---

[1]      The net recovery was $17,676.67 because Horace Mann Insurance Company previously tendered $7,324.33 to repair the Hendersons' vehicle.

[2]      Plaintiffs erroneously state that the *Burk* factors may be used only for purposes of enhancing a fee award.  [Dkt. # 203, p. 6].  This is clearly not the law as interpreted by the Tenth Circuit Court of Appeals.  *See* n.8, *infra*.

# I
## _Background_

### A.  History of the Dispute

This lawsuit arose from a property damage claim made by Plaintiffs on their insurer, Horace Mann Insurance Company ("HMIC").  Plaintiffs' 1996 Blazer was struck and damaged by another vehicle in June 2000.  When efforts to resolve the matter with the tortfeasor's insurer failed, the Hendersons made a claim under their HMIC auto policy.[3]  That policy provided that in the event of an accident, HMIC would pay to replace or repair the Hendersons' vehicle, whichever cost less.  A dispute arose between the Hendersons and HMIC as to whether their Blazer had been totaled in the accident thereby triggering HMIC's duty to pay replacement value.  HMIC decided the vehicle was not totaled and could be repaired.  Accordingly, in 2001, HMIC tendered two checks totaling $7,824.23 for repair costs and deductible.  A year later, Plaintiffs returned the checks and in January 2003, the Hendersons made demand on HMIC for $25,000 – the full policy amount.

### B.  History of the Litigation.

In July 2003 the Hendersons filed suit against HMIC in Osage County District Court alleging breach of contract and bad faith.  HMIC removed the case to this Court in August 2003 based on diversity jurisdiction.[4]  Subsequently, HMIC moved for summary judgment on both the breach of contract and the bad faith claims and in January 2005, the

---

[3]      The tortfeasor's insurer, Oklahoma Farm Bureau, determined that the Hendersons' vehicle was totaled and offered to pay $14,700.

[4]      The Removal Petition recited that "Plaintiffs' counsel has represented to Defendant's counsel that Plaintiffs' claims exceed the amount in controversy of $75,000 exclusive of interests (sic) and costs."  [Dkt. # 1].

District Court ruled in HMIC's favor on bad faith but denied summary judgment on the contract claim, finding a genuine issue of material fact as to when the Hendersons reported their loss to HMIC. [Dkt. #61].  In an effort to revive their bad faith claim, on July 26, 2005, the Hendersons filed a "Motion to Revise and Reconsider:  Reopening Defendant's Motion for Summary Judgment Under the New Badillo." [Dkt. # 79].[5] Plaintiffs' Motion to Reconsider was denied in October 2005. [Dkt. # 95].

With only the breach of contract claim remaining, HMIC made an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure for $25,001.00. Plaintiffs accepted the offer; accordingly, Judgment was entered on November 2, 2005. [Dkt. # 106].  Following entry of the Judgment the Hendersons filed Notice of Appeal of the Court's bad faith ruling [Dkt. # 111]; however, the appeal was voluntarily dismissed 19 months later. [Dkt. # 169].  Plaintiffs also filed a Motion to Alter or Amend Judgment, seeking to add pre-judgment interest [Dkt. # 107], which was denied [Dkt. # 161]. Plaintiffs' Motion for Attorney Fees [Dkt. # 110] prompted HMIC to file a Motion to Vacate Judgment [Dkt. # 126], which was also denied [Dkt. # 161].

---

[5]     The Motion, ostensibly prompted by a change in the Oklahoma law of bad faith, was 25 pages long, and contained two Appendices of evidence not previously brought to the Court's attention as well as evidence to rebut findings in the Court's summary Judgment Order.  The Motion also included 200 pages of exhibits.  Plaintiffs stated that these attachments provided the Court with necessary reference material in "raw form (Exhibits)," "processed form (Appendix 1)," and "anecdotal footnote form (Appendix 2)." [Dkt. # 81, p.2].  Because the motion and brief did not comply with the local rules as to format and length, the Court ordered the motion re-filed in full compliance with the rules.  Plaintiff's "First Amended Motion to Revise: Reopening Defendant's Motion for Summary Judgment Under the New Badillo" was filed on August 8, 2005 [Dkt. ## 86 & 87].  Hereafter, this amended motion will be referred to as the "Motion to Reconsider."

The sole remaining issue for this Court to decide is the amount of reasonable attorney fees to be awarded to Plaintiffs under Okla.Stat. tit. 36, §3629(B). as prevailing parties on their breach of contract claim.

## II
### Applicable Law

In diversity cases such as this, attorney fees are substantive and are determined by state law.  *Oulds v. Principal Mutual Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir. 1993). Oklahoma follows the American Rule – each litigant is responsible for its own attorney fees unless that rule is modified by statute or contractual provision.  *State ex rel. Dept. of Transp. v. Norman Indus. Dev. Corp.*, 41 P.3d 960, 962 (Okla. 2001).   Here, the American Rule has been modified by the Oklahoma Legislature's adoption of Okla.Stat. tit. 36, §3629(B) which provides:

> It shall be the duty of the insurer, receiving a proof of loss, to submit a written offer of settlement or rejection of the claim to the insured within ninety (90) days of receipt of that proof of loss. Upon a judgment rendered to either party, costs and attorney fees shall be allowable to the prevailing party. For purposes of this section, the prevailing party is the insurer in those cases where judgment does not exceed written offer of settlement. In all other judgments the insured shall be the prevailing party. If the insured is the prevailing party, the court in rendering judgment shall add interest on the verdict at the rate of fifteen percent (15%) per year from the date the loss was payable pursuant to the provisions of the contract to the date of the verdict. This provision shall not apply to uninsured motorist coverage.

Okla.Stat. tit. 36, §3629(B) (emphasis added).[6]

---

[6]     Three reasons explain this departure from the American rule:  (1) to make the successful party whole; (2) to create an economic incentive influencing decisions whether to pursue legal relief and whether to settle a claim and (3) to affect the relative strengths of the parties thereby curing an imbalance of economic power and access to legal process.  For a general discussion of the theories underlying fee-shifting statutes such as Okla.Stat. tit. 36, §3629(B),  see Thomas D. Rowe, Jr., *The Legal Theory of Attorney Fee Shifting:  A Critical Overview*, 1982 Duke L.J. 651, 665 (September 1982).

Although Oklahoma law governs the fee determination, federal case law is often helpful in applying the fundamental reasonableness test. *See Finnell v. Seismic*, 67 P.3d 339, 346 n.38 (Okla. 2003) (noting that the federal standards are substantially similar to those contained in Rule 1.5 of the Rules of Professional Conduct, 5 O.S. 2001, Ch.1, App. 3-A and "an exhaustive application of either list will almost always lead to a just and reasonable result.").

Under the typical fee-shifting statute, attorney fees are awarded to the prevailing party but only to the extent that he or she prevails. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 715 (1987). Here, Plaintiffs brought claims for breach of contract and bad faith but prevailed only on the contract claim. The Court has previously analyzed the operative fee statute and held that Plaintiffs are prevailing parties pursuant to the Judgment entered on November 2, 2005. [*See* Dkt. ## 153 & 161]. An award of attorney fees is mandatory upon compliance with § 3629(B), *Stauth v. National Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1266-67 (10th Cir. 2001)[7]; however, the determination of the amount of a reasonable fee award is left to the sound discretion of the district court. *Shadoan*, 894 P.2d at 1144 ("As in every attorney fee case, trial court retains discretion to determine the proper amount of an attorney fee award.").

---

[7]     Citing *Shadoan v. Liberty Mut. Fire Ins. Co.*, 894 P.2d 1140, 1143-44 (Okla. Ct. App. 1995) and *Williams v. Old Am. Ins. Co.*, 907 P.2d 1105, 1107 (Okla. Ct. App. 1995), *Stauth* expressly overruled *Adair State Bank v. American Cas. Co. of Reading, Pennsylvania*, 949 F.2d 1067 (10th Cir. 1991) on this issue. *Stauth*, 236 F.3d at 1267. *Adair State Bank* had held that an award of fees under §3629(B) was entirely discretionary, not mandatory. *Id.* at 1077-78. Although *Williams* and *Shadoan* are not binding precedent under Oklahoma law, the court in *Stauth* found that they are evidence of how the Oklahoma Supreme Court would rule if presented with the issue. *Stauth*, 236 F.3d at 1267.

An award of fees must be reasonable under the particular circumstances and in all cases must bear some reasonable relationship to the amount in controversy. S*outhwestern Bell Telephone Co. v. Parker Pest Control, Inc.*, 737 P.2d 1186, 1189 (Okla 1987); *Peters v. American Income Life Ins. Co.*, 77 P.3d 1090, 1102 (Okla. Civ. App. 2002) (awarding fees under §3629(B)); *Spencer v. Oklahoma Gas & Elec. Co.*, 171 P.3d 890, 895 (Okla. 2007); *Arkoma Gas Co. v. Otis Engineering Corp.*, 849 P.2d 392, 394 (Okla. 1993).

A fee claimant must "prove and establish [the] reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995).  Lack of sufficient detail in the fee claimant's time records may make it impossible for the court to determine whether particular services are compensable and will justify a denial of all or a portion of the fees requested.  *Id.*  In all cases the amount of fees awarded must be reasonable.  *Morgan v. Galilean Health Enterprises, Inc.*, 977 P.2d 357, 364 (Okla. 1998).  The Tenth Circuit has recognized that it may be unreasonable and practically impossible for the district court to identify hours reasonably expended by billing entry or litigation activity.  *Case v. Unified School Dist. No. 223*, 157 F.3d 1243, 1250 (10th Cir. 1998).  "There is no requirement … that district courts identify and justify each disallowed hour.  Nor is there any requirement that district courts announce what hours are permitted for each legal task. . . .   A general reduction of hours claimed in order to achieve what the court determines to be a reasonable number is not an erroneous method, so long as there is sufficient reason for its use." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986) (citations omitted).

A reasonable fee "does not necessarily result from simple multiplication of the hours spent times a fixed hourly rate."  *Southwestern Bell*, 737 P.2d at 1189 (quoting *Carkeek v. Ayer*, 613 P.2d 1013, 1015 (Mont. 1980)).  While the time spent by attorneys in performing services is an important factor that must be considered, "fees cannot fairly be awarded on the basis of time alone."  *Oliver's Sports Center v. National Standard Ins. Co.*, 615 P.2d 291, 294 (Okla. 1980).  The fact that certain services were unnecessary, unproductive or duplicative may be taken into account.  Robert L. Rossi, Attorneys' Fees §5:3, at 5-14 [West 3rd ed.].  In each case the court must consider what is a reasonable fee in light of the extent to which the plaintiff prevailed.  *Arkoma Gas*, 849 P.2d at 395.

The Oklahoma Supreme Court has outlined a two-step procedure for arriving at a reasonable fee:  (1) determine the so-called "lodestar" amount based on the appropriate hourly rate within the market and number of hours reasonably expended, and (2) enhance or reduce this number by adding an amount arrived at by applying the *Burk* factors or those provided for in Rule 1.5 of the Oklahoma Rules of Professional Conduct.[8]  *Burk*, 598 P.2d at 660-61; 7 OKPRAC § 24.8 (West 1999).

The burden is on Plaintiff to demonstrate that the time for which compensation is sought was reasonably incurred and necessary.  *Oliver's Sports Center*, 615 P.2d at 295; *Green Bay Packaging, Inc. v. Preferred Packaging, Inc.*, 932 P.2d 1091, 1099-1100 (Okla. 1996) (Lawyers seeking fees must present detailed time records and offer evidence of reasonable value of services rendered).  The district court should consider: (1) what

---

[8]  Plaintiffs suggest that the *Burk* factors may be considered only for purposes of enhancing the lodestar figure. This argument has been expressly rejected. *Hall v. Globe Life & Acc. Ins. Co.*, 968 P.2d 1260, 1262 ((Ok.Civ.App. 1998). Courts have held that the *Burk* factors are appropriately used to enhance *or reduce* the lodestar amount.  *Id.*; *Arkoma Gas*, 849 P.2d at 393-95.

attorney services were performed; (2) which services were necessary; (3) the value of the

necessary services; and (4) what a reasonable fee for the services would be. *Darrow v.*

*Spencer*, 581 P.2d 1309, 1314 (Okla.1978).

At the second step, as outlined in *Burk*, the factors to be considered are:

> 1. Time and labor required.
> 2. The novelty and difficulty of the questions.
> 3. The skill requisite to perform the legal service properly.
> 4. The preclusion of other employment by the attorney due to acceptance of the case.
> 5. The customary fee.
> 6. Whether the fee is fixed or contingent.
> 7. Time limitations imposed by the client or the circumstances.
> 8. The amount involved and the results obtained.
> 9. The experience, reputation and ability of the attorneys.
> 10. The 'undesirability' of the case.
> 11. The nature and length of the professional relationship with the client.
> 12. Awards in similar cases.

*Burk*, 598 P.2d at 661.[9]

The final fee determination is further subject to the rule that any fee award must

"bear some reasonable relationship to the amount in controversy."  *Arkoma Gas*, 849

P.2d at 394; *Southwestern Bell*, 737 P.2d at 1189.

### III
### *Discussion*

Plaintiffs' fee request must be assessed within the analytic framework described

above.  Essentially, that framework consists of three components:

- Calculation of the so-called "lodestar" amount based on reasonable market hourly rates for attorneys and legal assistants multiplied by a reasonable number of hours devoted to the case,

---

[9]      The "*Burk* factors" were adopted from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

- Application of the 12 "*Burk* factors" to either increase or decrease the fee award,

- Determination that the fee, as calculated by the Court, is "reasonably related" to the amount in controversy.

In order to perform this analysis, I have fully reviewed the time records submitted.  I have also read the full transcripts of the depositions of Michele Fennewald and  Twanna Amos to determine the nature of the discovery sought.  I have reviewed Plaintiffs' First Set of Interrogatories, First Request for Admissions and First Request for Production of Documents as well as Plaintiffs' Interrogatories Nos. 10-23 Inclusive in order to evaluate whether this discovery was related to the bad faith claim or the breach of contract claim.  Because many of the entries in the time records are unclear as to purpose of certain work, I have also reviewed the Motion for Summary Judgment and responses, the Motion to Reconsider, the supporting documentation and many other pleadings and exhibits to determine – among other things – whether the time recorded was directed at the breach of contract claim, the bad faith claim, or both.

## A.  Lodestar Calculation – Hourly Rates.

Plaintiffs used four attorneys:  Renee Williams, D. Kevin Ikenberry, Stephen L. Andrew and Jay B. White.  Andrew, Williams and Ikenberry are named partners in their law firm.[10]  White was "Of Counsel" with the firm at the time of this case.  Each lawyer billed at $250 per hour.  No distinction was made between in-court time and out-of-court time.  HMIC objects to an hourly rate in excess of $150 per hour on this breach of contract case.

---

[10]        Appropriately named Andrew, Williams & Ikenberry.

The reasonable hourly rate is that prevailing in the community for similar work. *Copeland v. Marshall*, 641 F.2d 880, 892 (D.C.Cir. 1980); *Johnson*, 488 F.2d at 718. This Court has upheld an hourly rate of $250 in an oil and gas take or pay contract case. *Oklahoma Natural Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246, 1255 (N.D.Okla. 2004) ("*ONG*").  However, while the Court found that case was "not extraordinarily complex," it was significantly more involved that the present lawsuit.  Absent the bad faith claim, this was a suit over proceeds due under a $25,000 automobile insurance policy for property damage.   This case was not especially complicated and did not require a high level of expertise.  Although the *ONG* case also involved multiple lawyers – five attorneys represented the plaintiff – the Court only approved one lawyer at an hourly rate of $250.  While all of the lawyers representing Plaintiffs herein are experienced attorneys, it is not reasonable in a modest case such as this for four attorneys to be billing at $250 per hour for all of their time – whether in court or out and whether the tasks could readily be handled by an associate or paralegal billing at a lower rate. Attorneys billed $250 per hour for taking a deposition or arguing a summary judgment motion as well as such tasks as serving a subpoena or preparing exhibits.  The fee request does not acknowledge the qualitative difference in these tasks.

It is also noteworthy that there are a significant number of time entries in which an attorney has charged $250 per hour for tasks that would more appropriately be assigned to a paralegal at a much reduced hourly rate.  For example: time spent setting up files (7/15/2003); updating and indexing files (3/22/2004); compiling deposition notebooks (8/3/2004); filing pleadings (5/9/2005); downloading copies of statutes/cases and putting them in a research file (5/16/2005); calling the clients to set up an office

meeting (7/28/2005); organizing exhibits (10/15/2005); "research" to find an individual's

home address (10/16/2005); trying to find an individual's phone number (10/16/2005);

travel to serve a subpoena (10/16/2005); putting exhibits in numerical order

(10/20/2005); and many others.  Much of this work would not be billed at all, let alone by

an attorney at $250 per hour.  I have identified numerous instances where proper billing

judgment was not exercised in this regard.  This is highlighted by the fact that attorneys

performed the tasks described above, not paralegals.  In fact, the amount of attorney time

billed in this case exceeds 500 hours while the amount of paralegal time is only 45 hours.

Considering all of these factors and based upon my determination of the type of

work being performed by the attorneys in this case as well as my knowledge of the

community rates for attorneys competent to perform this work, I find the following to be

reasonable hourly rates:

| Attorney | In-Court | Out of Court |
|---|---|---|
| Steven L. Andrew | $250 | $250 |
| D. Kevin Ikenberry | $250 | $175 |
| Renee Williams | $250 | $150 |
| Jay B. White | $200 | $150 |

Very little of the accumulated time is in-court time.  By my calculation fewer than

20 of the billed hours involved court appearances either in person or by telephone.

Williams logged 9 in-court hours; Andrew 6.9 and Ikenberry 3.

**B.  Lodestar Calculation – Hours Reasonably Expended.**

In order for the Court to determine the "hours reasonably expended" the claimant

must submit detailed time records and offer evidence of the reasonable value of the

services performed, predicated on standards within the local legal community.  *Burk*, 598

P.2d at 663.  Hours that are not properly billed to one's client may not be billed to one's

adversary.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (*citing Copeland*, 641 F.2d at

891).  The hours used in the lodestar calculation should only be productive time.

*Copeland*, 641 F.2d at 891.  Hours spent litigating claims on which the claimant did not

prevail should be deducted from the calculation.  *Id.* at 891-92.  However, recovery of

attorney fees under §3629(B) "embraces both contract and tort-related theories of liability

so long as the 'core element' of the damages *sought* and *awarded* is composed of the

insured loss." *Taylor v. State Farm Fire & Casualty Co.*, 981 P.2d 1253, 1256 (Okla.

1977).

        Since the Plaintiffs' time records are not broken down separately by attorney and

paralegal, I have done my own summary:

| Attorney | Hours Claimed | Fee |
|---|---|---|
| Steven Andrew (SLA) | 98.3 hours   @ $250 | $  24,575.00 |
| Kevin Ikenberry (DKI) | 148.2 hours @ $250 | $  37,050.00 |
| Renee Williams (RW) | 227.3 hours @ $250 | $  56,825.00 |
| Jay B. White (JBW) | 61.5 hours   @ $250 | $  15,375.00 |
| **ATTORNEYS** | **535.3      @ $250** | **$133,825.00** |
| | | |
| **Paralegal** | **Hours Claimed** | **Fee** |
| SMD | 17.1 hours @ $100 | $ 1,710.00 |
| SW | 1.9 hours @ $  95 | $     180.50 |
| GB | 24.1 hours @ $  75 | $ 1,807.50 |
| DW | 1.5 hours @ $  50 | $       75.00 |
| **PARALEGALS** | **44.6 hours** | **$ 3,773.00** |
| | | |
| **TOTAL** | | **$137,598 .00[11]** |

        HMIC has raised a number of specific objections to the Hendersons' fee request.

These are addressed in order below.

---

[11]        The Court has not identified all reasons for the discrepancy between its
calculation of fees claimed and the number proposed by Plaintiffs; however, some of the
difference is due to mathematical errors in Plaintiffs' fee calculation.  *E.g.*, time entries
for 7/14/2005, 7/15/2005 and 7/16/2005 where fees for 2.5 hours work were calculated at
$675 instead of $625.

**(1)  Time that HMIC contends is unrelated to this lawsuit.**

HMIC contends that much of the time claimed by Plaintiffs' attorneys should not be compensable because it is unrelated either to this case or to the claim on which Plaintiffs prevailed.  Williams seeks compensation for 15.65 hours recorded between Feb. 5, 2002, and May 22, 2003.  The Complaint in this lawsuit was not drafted until June 2003.  Time spent prior to that date dealt with matters related to other aspects of the Hendersons' problems – *e.g.*, storage fees for the Hendersons' car, the Tulsa Teachers' Credit Union's lien on the Hendersons' vehicle or negotiations with the tortfeasor's insurance company.  This time is unrelated to this lawsuit and is properly excluded from the fees requested.

**(2)  Time spent solely on the bad faith claim.**

Plaintiffs contend that all time spent solely on bad faith has been eliminated from the submitted time records.  Defendant disagrees and asks the Court to exclude time spent on issues that relate only to the bad faith issue.  Resolution of this issue has occupied significant time because it has required the Court to go beyond the time entries to determine the focus of the work.

Plaintiffs cite *Quail Creek Petroleum Management Corp. v. XL Specialty Ins. Co.,* 129 Fed.Appx. 466 (10th Cir. 2005) (unpublished), for the proposition that where a party prevails on a breach of insurance contract claim but not its conjoined twin – bad faith – that the trial court may not "arbitrarily reduce the attorneys' fee award in an attempt to apportion fees between the successful and unsuccessful claims."  (Motion for Attorney Fees, Dkt. # 110, p. 4).  Based on *Quail Creek*, Plaintiffs argue that only very limited reductions should be made in the time claimed.  However, it is critical to recognize that

because *Quail Creek* is an unpublished opinion it is not binding precedent.  10th Cir. R. 32.1.  It may, however, be cited for persuasive value.  *Id.*  For reasons set forth below, I do not consider *Quail Creek* to be persuasive in determining fees in a case such as this. Thus, I have employed the standard attorney fee procedure outlined above.

In *Quail Creek*, the Tenth Circuit examined a case similar to the one before me. In that case plaintiff prevailed on a breach of insurance contract claim but failed on a bad faith claim.  Because the district court could not ascertain from the time records submitted how much time was expended on the bad faith claim, it reduced the fees by 33 percent "to account for plaintiff's failure to prevail on all issues."  *Quail Creek*, 129 Fed.Appx. at 470.  The appellate court rejected this approach.  Noting that "a bad-faith action is inextricably intertwined with a breach-of-contract claim," the court stated that the district court should have "examined the time sheets to determine if the amounts requested were reasonably related to the contract claim and should have specifically noted which expenditures were unrelated to that claim."  *Id.*

I find *Quail Creek* unpersuasive because it presumes that an attorney's time records will reflect whether the time recorded was spent purely on a bad faith claim or on an issue that could apply equally to both a contract and a bad faith claim.  Unfortunately. this is rarely the case.  Furthermore, *Quail Creek* would have two unintended consequences:  First, it would effectively shift the claimant's burden to justify the time for which he or she seeks payment and effectively create a burden on the court to justify any reductions in the fees claimed.  This would unduly protract and complicate attorney fee disputes and produce the sort of satellite litigation that courts have warned against. *E.g.*, *Hensley*, 461 U.S. at 437 ("A request for attorney's fees should not result in a

second major litigation."). Second, *Quail Creek* would give attorneys incentive to pad their time records and to describe their activities as generally as possible in order to avoid the sort of analysis suggested in that opinion.

Plaintiffs submit that all time related to bad faith has been cut from their time records; however, I find that is not the case. There are many instances in the Plaintiff's time records where the focus is solely the bad faith claim. One example is this July 21, 2005, time entry:

**7/21/2005 JBW  Telephone Call 5.0 hours [reduced to 2.5 hours]**

> T/c with Robert Stout requesting conference to finalize affidavit.
> Multiple t/cs with Mr. Stout to coordinate meeting to discuss
> possible affidavit; agreement to meet Mr. Stout at McDonald's at
> 15th and Lewis; redraft of draft outline of affidavit for Mr. Stout;
> travel to interview Mr. Stout to determine what he knows and
> remembers; corrections and changes to affidavit; Mr. Stout agreed
> to meet later in the day when his affidavit could be corrected and
> changed as he required; Return travel to office; multiple calls with
> Mr. Stout to coordinate meeting him for final approval of affidavit;
> agreement to meet at Notary Public's office in North Tulsa; travel
> to North Tulsa Notary Public's office to meet Mt. Stout to review
> changes to affidavit, obtain notarized signature; return travel to
> office.

July 21, 2005, time entry of JBW.

Two problems – vagueness and block-billing[12] -- plague this entry. The subject matter of the Stout information is not apparent; thus, it is impossible from the face of the entry to determine whether it relates to breach of contract or bad faith.[13]  However, a review of the submitted time records establishes that the focus of White's (JBW) work

---

[12]    "Block-billing" or "lumping" occurs when an attorney records time spent on various tasks during a given day but does not indicate the amount of time spent on each specific task. *See In re Reconversion Technologies, Inc.*, 216 B.R. 46, 57-58 (Bankr. N.D.Okla. 1997).

[13]    An example of why I find the process suggested in *Quail Creek* unpersuasive.

was the Motion to Reconsider the Court's bad faith ruling.  Indeed, White first appears in

the time records on May 16, 2005, responding to a phone call from Williams requesting

that White undertake research regarding a possible Motion to Reconsider.  (Plaintiffs'

time Records, p. 19).  White worked on such a motion in May and July of 2005.  Five

days after the July 21 time entry described above, Plaintiffs filed their initial Motion to

Reconsider.  [Dkt. # 79].  The Motion to Reconsider was directed solely at

reconsideration of Plaintiffs' bad faith claim.  Attached as Exhibit "10" to the Motion to

Reconsider was a two-page Affidavit signed by Robert Stout.  Thus, it seems clear that

White's time for July 21, 2005, is directed to the issue of bad faith and should be

excluded.  There are similar problems relating to affidavits of Steve Kimbrel (Ex. "23" to

Dkt. # 79) and Vince Goins (Ex. 9 to Dkt. # 79).

     Another example of the difficulty in separating compensable and non-

compensable time is represented by this time entry:

**5/24/2005 JBW Worked on        5 hours [reduced to 2.5]**

> Continuation of study of law, attempts to articulate arguments in a
> substantive brief under outline; continue efforts to draft brief in
> support, and to determine evidence to be developed for use in
> support of brief and trial in both bad faith and breach of contract
> claims.

     This entry is vague because it does not specify what legal issue is being studied.

Thus, is excludable on that basis alone.  In addition, however, after referring to the

surrounding time entries, it is clear that the "continuing study" and the "outline"

mentioned also relate to the Motion to Reconsider the Court's bad faith ruling.  Thus, the

time is properly excludable on this basis as well.  Finally, because the recorded time is

block-billed, it is impossible to determine how much of the attorney's time was spent on

the bad faith issue and how much was related to the contract claim.  This is also ground for exclusion.

A final example of the time spent on bad faith is found in Plaintiffs' discovery time.  I have reviewed the discovery requests drafted by Plaintiffs' counsel as well as the depositions of Michele Fennewald and Twanna Amos of HMIC.  I conclude from my review of those materials that the majority of this discovery dealt with issues related primarily, if not solely, to Plaintiffs' bad faith claim.  I also find that the time logged to discovery in this case was excessive and duplicative and, therefore, a significant reduction is warranted.  This is especially true where two attorneys billing $250 per hour traveled to St. Louis to take two depositions, with each attorney billing 11 hours.  I have reviewed these depositions in full.  The deposition of Amos focused little on Plaintiffs' contract claim.

**(3)  Block-billing.**

It is the fee applicant's burden to submit records that enable the Court to make an informed determination concerning the reasonableness of the hours claimed and the nature of the services provided.  *Burk*, 598 P.2d at 663; *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983).  When time is recorded in vague descriptions or is block-billed, the court is not provided the "detailed time records showing the work performed" that is required under Oklahoma law.  *Burk*, 598 P.2d at 663.  Block-billing prevents the Court from determining how much time was spent on each specific task, and, thus, whether the time claimed is reasonable.

I have found no Oklahoma cases specifically addressing the block-billing issue, and the Tenth Circuit has not adopted a *per se* rule requiring reduction of fees in the

event of block-billing.  *Cadena v. Pacesetter*, 224 F.3d 1203, 1215 (10th Cir. 2000) ("[T]his court has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block-billing.")  However, courts may discount fees if time records are not properly kept and do not permit the requisite evaluation  *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  That is the case here.

Courts confronted with block-billing have reduced the attorney fees claimed by a fixed percentage or disallowed them entirely.  *ONG*, 355 F. Supp. 2d at 1265 (15 percent reduction to compensate for block-billing and other problems); *Jane L.*, 61 F.3d at 1510 (35 percent reduction for "sloppy and imprecise" time records);  *In re Automobile Warranty Corp.*, 138 B.R. 72, 77 (Bankr.D.Colo.1991) (10 percent reduction applied to total fee request).  *See also In re Reconversion Technologies*, 216 B.R. at 58 (discussing cases, but declining to do a percentage reduction).

The burden is on the fee claimant to provide proper time records for review. *Burk*, 598 P.2d at 663.  Under these circumstances, a reduction in time is warranted to account for block-billing, and lack of detail in time entries that render the requisite analysis impossible.  Because of this, Plaintiffs' counsel have failed to meet their burden to justify the time for which they seek compensation.

**(4)  Time spent on Plaintiffs' claim against the collision wrongdoer.**

HMIC has identified two time entries – 4/11/2002 and 4/16/2002 – for time spent dealing with the claim against the tortfeasor and the tortfeasor's insurance company. This time has already been excluded pursuant to section B(1) above.

**(5)  Time spent on collection efforts.**

HMIC contends that time counsel spent dealing with lawsuits or claims against the Plaintiffs for non-payment of debts should be excluded.  I agree.  Most of the time entries identified by HMIC have already been excluded under section B(1).  Plaintiffs are no longer seeking compensation for the .4-hour recorded on 10/13/2004.  Counsel seeks payment for 2.0 hours recorded on 1/20/2005.  The time entry reads:

> Meeting with Stuart Henderson, telephone calls to David Scott and Regina Henderson concerning garnishment, release and satisfaction of judgment. Discuss status of breach of contract claim.

Time Records, p. 18.

Because of block-billing I am unable to determine how much time was spent on the Hendersons' garnishment and related matters, and how much was spent discussing the breach of contract claim.  All time for this date will be excluded since counsel has failed to meet her burden under *Burk* to provide time records establishing how much time was spent on each task.

The time .3-hour recorded on 9/14/2005 regarding a foreclosure action against the Hendersons should be excluded.

**(6)  Time spent on clerical tasks.**

Much of this time has already been excluded by Plaintiffs; however, I have identified approximately $1,500.00 worth of additional attorney time that should be excluded on this basis.

**(7)  Time spent "reviewing" documents.**

Counsel spent small increments of time reviewing such documents as an entry of appearance or a minute order.  Such time is excludable.  Time spent on such minor

matters would not normally be billed to one's own client, and time that is not properly billed to one's client is not properly billed to one's adversary.

**(8)  Time spent in interoffice conferences.**

Some reduction is in order for interoffice conferences.  For example, on Jan. 18, 2007, Ikenberry, Andrew and Williams conferred with one another to prepare for an upcoming mediation session with the Tenth Circuit.  Ikenberry did not charge for his time, but both Andrew and Williams did.  On July 22, 2007, Ikenberry, Williams and Andrew conferred regarding the impact of my previous Report and Recommendation in this case.  Each lawyer billed for the conference time.  Time spent by lawyers conferring with co-counsel should be excluded or certainly not billed at $250 per hour.

**(9)  Duplicative work.**

There are several instances of duplicative work.  Two lawyers billed 22 hours ($5,500) to take two depositions in St. Louis, MO. is one example.  One of these depositions (Amos) has little relevance to the contract claim Plaintiffs prevailed on.  One experienced attorney could easily have taken both depositions.

On Feb. 23, 2006,  Ikenberry, Williams and Andrew all billed for reviewing the same Report and Recommendation.  Multiple lawyers attended the same hearings on several occasion (e.g., Jan. 25, 2006).  In addition, multiple lawyers worked on the same tasks, and the time records do not provide sufficient detail for the Court to determine the degree of overlap.

I have also found several instances of excessive billing.  As just one example, Williams logged seven (7) hours in one day drafting Plaintiffs' First Interrogatories and

Requests for Admission and Production.[14] These discovery requests included nine Interrogatories, seven Requests for Production, and seven Requests for Admission. None of the discovery requests is complicated, complex or unusual. It is inconceivable that drafting such requests would require seven hours from an attorney as experienced as Williams. The time is clearly excessive and will be reduced significantly.

At the Jan. 9 hearing, Defendant also objected to three specific categories of attorney time: (a) Time spent solely on the bad faith claim.; (b) All time incurred after the date of Judgment; (c) Time spent in mediation at the Tenth Circuit Court of Appeals. I have determined that time spent only on the bad faith claim should be excluded. Time spent after the date of Judgment has been evaluated on the basis of whether it was reasonably incurred in relation to the breach of contract claim on which Plaintiffs prevailed. Time spent on mediation before the Tenth Circuit has been excluded. The case was before the appellate court only because Plaintiffs appealed the District Court's bad faith ruling. Plaintiffs did not prevail on that appeal or on the underlying bad faith claim. The Tenth Circuit mediation effort did not resolve the case and did nothing to affect the Judgment entered by the District Court on Nov. 2, 2005.

## C. Revised Lodestar Calculation

I have carefully reviewed the time records submitted. I have considered the factors outlined in *Darrow*, 581 P.2d at 1314: (1) what services were performed; (2) what services were necessary; (3) the value of the necessary services; and, (4) what a reasonable fee for those services would be. After eliminating time on the basis described above, I find the following necessary and productive work was performed:

---

[14] An additional 12.2 hours was logged by Williams on these same discovery requests on May 22, 2003. That time has been deleted from the fee request.

- Williams: initial investigation, drafting Complaint, discovery  (70 hours).

- Andrew: discovery, research on attorney fee recovery (45 hours).

- Ikenberry: briefing: response to Motion for Summary Judgment, attorney fee request, response to Motion to Vacate Judgment, brief in support of Motion to Alter and Amend Judgment. (61 hours)

- White: Motion to Reconsider summary judgment ruling on bad faith (20 hours).[15]

Applying the hourly rates as determined above the lodestar calculation is as follows:

| Attorney | In-Court | Out of Court | Total |
|---|---|---|---|
| Williams | 10 ($2,500) | 60 ($9,000) | $11,500 |
| Andrew | 18 ($4,500) | 27 ($6,750) | $11,250 |
| Ikenberry | 3 ($750) | 58 ($10,150) | $10,900 |
| White | 0 | 20 ($3,000) | $ 3,000 |
| TOTAL | | | $36,650 |

## D.  Application of the *Burk* Factors.

After arriving at the lodestar amount, the Court must apply the various factors set forth in *Burk* to adjust the fee either upward or downward.

### (1) Time and Labor Required.

I have adjusted for this consideration in determining the reasonable number of hours for purposes of the lodestar calculation.  As I have discussed above, time spent on a case is only one of the factors a court must consider in determining a reasonable fee.

---

[15]    A motion to reconsider was justified by the Oklahoma Supreme Court's ruling in *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080 (2005) ("*Badillo II*").  This decision withdrew the Oklahoma Supreme Court's prior ruling in *Badillo*, 2004 WL 1245292 ("*Badillo I*"), that had been cited by Judge Eagan in her summary judgment ruling. However, the Motion to Reconsider [Dkt. ## 86 & 87] went far beyond what was appropriate to revisit any legal issue created by *Badillo II*.

*Oliver's Sports Center*, 615 P.2d at 294; *Hamilton v. Telex Corp.*, 625 P.2d 106, 110 (Okla. 1981).  Adjustments have been necessary due to vague time entries and block-billing.  In addition many of the hours claimed should be excluded given the nature of the tasks performed.  A reduction is also necessary since Plaintiffs achieved only partial success on their claims and recovered at most one-third of the amount sought.

(2) **Novelty and Difficulty of the Questions Presented.**

Complex cases may justify a higher fee and a simple case a lower fee.  Rossi, § 5:4 at 5-18.  With the exception of the effect of the revised *Badillo* decision  ("*Badillo II*") which was rendered during the pendency of this case, the case presented no novel questions of law.  The *Badillo II* decision was rendered on June 21, 2005, five months after the District Court had issued its ruling on HMIC's Motion for Summary Judgment and dismissed the Hendersons' bad faith claim.  This development justified a Motion to Reconsider the Court's summary judgment ruling on bad faith, but did not require the large expenditure of time made by White in seeking to reopen the summary judgment determination.  Other than this, the case was a simple breach of contract matter.

(3) **Skill Required to Perform the Legal Services.**

The case was a straight forward dispute over the amount due under an insurance contract.  An experienced lawyer with one associate could have handled the tasks.

(4)  **Preclusion of Other Employment.**

Counsel made a dubious business decision to devote more than 900 hours to working on this case.  Any preclusion from other employment was due to this choice by the attorneys.

**(5)  Customary fee.**

I have considered fee awards in other cases in determining the fee to be used in the lodestar determination.

**(6)  Whether the Fee is Fixed or Contingent.**

The fee agreement between the Hendersons and counsel is problematic.  There is no record evidence that the Plaintiffs had *any* fee agreement with counsel before January 4, 2006 – 18 months after the lawsuit was filed and two months after Judgment was rendered.  Williams explained during a telephonic hearing that she took the case on as a favor to a relative and that initially she had no intention of charging for her services.  Only after Judgment had been entered and Williams was preparing to file an appeal with the Tenth Circuit with respect to the bad faith ruling did she decide a written fee agreement was necessary.  The "contingency fee contract of employment" with the Andrew, Williams & Ikenberry firm provides for the following distribution of funds:

> 1) Attorney's costs and expenses paid first;
> 2) The remaining portion of $25,000 paid to client;
> 3) Any remaining moneys divided 50% to attorney and 50% to client.

Attorney-Client Contingency Fee Contract of Employment, submitted to the Court on Jan 23, 2008 [Dkt. # 196].

The agreement expressly notes that "All parties are aware that the Henderson's (sic) have accepted a settlement offer of $25,001.00."  At the time of this agreement there was only $1.00 remaining  to be distributed from the amount of the Judgment.[16]  Any other funds could come from only two sources:  the bad faith claim that had been dismissed and was on appeal to the Tenth Circuit, or an award of attorney fees.  On June

---

[16]     The $1.00 is the sum remaining from the Judgment amount of $25,001.00 less the $25,000.00 distributed according to the agreement.

14, 2007, after Plaintiffs had dismissed their appeal on the bad faith claim, the

Hendersons and counsel executed a "Closing Statement Upon Final Recovery." [Dkt. #

196]. This document provides:

> No fees will be deducted from the Net Recovery. Client and their
> attorneys will reach an agreement on disbursement on (sic) any attorneys'
> fees that may be awarded by the Court.

Closing Statement Upon Final Recovery [Dkt. # 196].

HMIC contends that these agreements provide grounds for denial of *any* fee

award. HMIC claims the Hendersons "have incurred no attorney fee obligations, have

paid no attorney fees, and are not entitled to any award of fees." [Dkt. # 202]. HMIC

contends that the fee agreement between the Hendersons and counsel is illegal and

invalid because it authorizes fee-splitting with a non-lawyer and, therefore, violates the

Oklahoma Rules of Professional Conduct. HMIC argues that the Hendersons are not

entitled to any fee award.

The Hendersons counter that the fee agreement does not violate ethical rules

because fee-splitting between a lawyer and his or her own client is not prohibited by Rule

5.4. Furthermore, Plaintiffs say, the enforceability of the fee agreement is irrelevant to

this Court's fee determination because the Court is not bound by that contract in

assessing fees.

Plaintiffs are correct that in determining a reasonable fee pursuant to a fee-shifting

statute the Court is not bound by any fee arrangement between the client and lawyer.

*Morgan*, 977 P.2d at 363-64. The fee contract is a matter between the client and attorney

and the amount due under that contract "may not serve as a basis for computing an

attorney's fee against an unsuccessful party." *Id.* at 363. Furthermore, the agreement

between the Hendersons and Plaintiffs' counsel is not binding on HMIC because HMIC was not a party to the agreement.  *Id.* at 363-64.  Finally, because the agreement does not form the basis for the award of attorneys' fees herein, HMIC is not harmed by the agreement and has no standing to contest its terms.  *Id.* at 364 n. 25.

Since the Court is not bound by the terms of the fee agreement, I need not determine whether the agreement is enforceable or valid.  However, even assuming that the agreement is unenforceable (as HMIC argues), or irrelevant (as the Hendersons argue), its terms may still be considered as evidence of what the parties considered a reasonable fee.  *City of Barnsdall v. Curnutt*, 174 P.2d 596, 600 (Okla. 1945).  The agreement indicates that the Hendersons and counsel envision the possibility of splitting any fee award 50-50.  Williams stated at the telephonic hearing that she expected that a significant portion of any attorney fee awarded by the Court would be retained by the Hendersons and that she expected that the Hendersons would wind up with more money than the attorneys.  This is further evidence that the parties to the agreement do not believe that an award of $137,000 is necessary to reasonably compensate the attorneys for time expended on this matter.

**(7) Time limits Imposed by the Client.**

This was not a factor in my determination.

**(8) Amount Involved and Results Obtained.**

The insurance contract at issue had a face value of $25,000; however, Plaintiffs sought at least $75,000 in the lawsuit.  The amount over and above the policy limit was based on recovering consequential damages for breach of contract or bad faith damages. Plaintiffs recovered no additional sum on either theory.  Plaintiffs recovered the full value

of the policy, but far less than what they sought in the lawsuit.  Based on this, the results

obtained were modest.

**(9) Experience, Reputation and Ability of the Attorneys.**

All of the attorneys were well-experienced, of good reputation and able.

However, I believe poor judgment was exercised in investing more than 900 hours of

attorney time in this case.  Undoubtedly, counsel was well-intentioned; nevertheless, this

case did not merit the investment made.

**(10)  Undesirability of the Case.**

This is not a factor in this fee determination.

**(11) Nature and Length of the Professional Relationship.**

There was apparently no prior relationship with these clients.  I did not find this to

be a factor in this case.

**(12)  Awards in Similar Cases.**

I believe the fee recommended award is consistent with fees awarded in other

contract cases.  For example, in *Arkoma*, Plaintiff recovered only $100 on an implied

warranty claim, but requested nearly $25,000 in attorney fees as prevailing party.

*Arkoma*, 849 P.2d at 393.  The trial court's  award of $5,500 in fees was affirmed on

appeal.  *Id.* at 393, 395.   In *Southwestern Bell Telephone Co.*, the trial court awarded

$5,000 in fees after confession of judgment for $1,500.  *Southwestern Bell Telephone*

*Co.*, 737 P.2d at 1188.  The Oklahoma Supreme Court found the award excessive and

reduced it to $3,000.  *Id.* at 1190.  In cases before this Court and elsewhere, attorney fee

awards in contract cases have covered the spectrum – ranging from less than the

Judgment to, in certain cases, a fee award in excess of the amount recovered.

### E. Reasonable Relationship to Amount in Dispute.

The attorney fee award appears large in comparison to the amount at issue; however, I have taken into the account the policies underlying two important statutory considerations:  First, the policy of promoting compromise as represented in Rule 68. *Marek v. Chesny*, 473 1, 5 (1985) ("The plain purpose of Rule 68 is to encourage settlement and avoid litigation.").  Second, the policy furthered by the Oklahoma fee statute at issue to require insurers to make an offer of settlement or a rejection of a claim within 90 days in order to resolve claims quickly and avoid needless attorney fees and cost.  Given these policy considerations as well as the records and documents I have reviewed, I believe the recommended fee is reasonably related to the amount in controversy.

One must always be aware, as Justice Opala noted in his dissent in *Southwestern Bell*, 737 P.2d at 1190, that there is a point at which the value of the attorney time expended may dwarf the amount recovered.  Justice Opala objected to an attorney fee award of $3,000 to recover half that amount.  "No economic benefit can be derived from legal services whose claimed cost is twice the amount of recovery." *Id.*  The fact is, however, that it will take the same amount of basic attorney time to pursue a contract claim for $25,000 as it will for a claim for $250,000.  Certainly, one aspect of Section 3629(B) is to discourage insurers from denying legitimate claims simply because of the legal cost associated with fighting that decision.  Nevertheless, where the amount in dispute is comparatively small, it is an attorney's obligation to exercise litigation judgment and find a resolution to the dispute without incurring excessive costs and fees.

Considering this fact as well, I believe that the recommended attorney fee bears a reasonable relationship to the amount in controversy in this case.

## IV
### *Conclusion*

I **RECOMMEND** a fee award to Plaintiffs of $36,650.00.

This particular fee determination is troublesome because of two errors in judgment – actually, one error of judgment and one error of *Judgment*.  Plaintiffs' counsel took on the Hendersons' case to help a relative's friends with a modest insurance dispute.  The underlying incident giving rise to the dispute was an automobile accident in which the other party to the accident was admittedly at fault.  The error in judgment committed by Plaintiffs' counsel was to take on this representation with no clear understanding of how much time would be invested in the case and whether or how the lawyers would be paid for their work.  Attorney Williams undertook the case, in part, as a favor to her brother, a friend of the Hendersons, thereby proving that it is not just the road to hell that is paved with good intentions.  Within just a few weeks after the Complaint had been filed in this case, Plaintiffs' counsel had already accrued more in attorney fees than the ultimate Judgment.  By late 2005, the Andrew, Ikenberry & Williams law firm had logged more than $150,000 in attorney time on the case and it was still unclear whether the firm would receive any compensation for the time spent on the Hendersons' case.  It was at this point that Defense counsel's error in Judgment changed the picture.

Apparently, in an effort to stop the bleeding of its own legal fees in November 2005 the Defendant made an Offer of Judgment pursuant to Rule 68, a procedural device designed to help foster settlement of legal disputes.  HMIC proposed to confess Judgment for $25,001.  But since the Offer of Judgment did not recite that the Judgment amount

included accrued costs and fees, it opened the door for Plaintiffs to shift the burden of $150,000 in fees from Plaintiffs' counsel to HMIC.  This is not the sort of fee-shifting envisioned in the Oklahoma statute.  Under the law, HMIC is responsible for "reasonable attorneys' fees" incurred to secure the Judgment herein.  The recommended amount represents that figure.

## OBJECTIONS

The District Judge assigned to this case will conduct a de novo review of the record and determine whether to adopt or revise this Report and Recommendation or whether to recommit the matter to the undersigned.  As part of his/her review of the record, the District Judge will consider the parties' written objections to this Report and Recommendation.  A party wishing to file objections to this Report and Recommendation must do so within ten days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).  The failure to file written objections to this Report and Recommendation may bar the party failing to object from appealing any of the factual or legal findings in this Report and Recommendation that are accepted or adopted by the District Court.  *See Moore v. United States*, 950 F.2d 656 (10th Cir. 1991); and *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

DATED this 25th day of February, 2008.

Paul J. Cleary
United States Magistrate Judge